**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**KENT KELLER**, individually and on behalf of others similarly situated,

**Plaintiff,**

**v.**

**KOVACK FINANCIAL, LLC**,

**Defendant.**

**Case No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Kent Keller ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against Defendant Kovack Financial, LLC ("Defendant") based upon personal knowledge of facts, upon information and belief, and based on the investigation of counsel as to all other matters.

## I. SUMMARY

1. Plaintiff brings this Action on behalf of himself and all other similarly situated victims as a result of a cyberattack and data breach involving personally identifiable information ("PII" or "Private Information") suffered by Defendant (the "Data Breach").

2. Defendant is a Florida-based, privately owned, mid-sized independent broker-dealer and registered investment advisors.

3. Defendant became aware of suspicious activity on its IT Network on or around Aug. 28, 2025.[1] In response, Defendant launched an investigation to determine the nature and

[1] https://oag.ca.gov/system/files/Kovack%20Securities%20Inc.%20-%20Notice%20of%20Data%20Event%20-%20CA%20AG_0.pdf (last visited Aug. 12, 2026).

scope of the Data Breach.[2]

4. Defendant's investigation determined that an unknown actor gained access to files on Defendant's computer network between Aug. 8, 2025, and Aug. 27, 2025.[3] Defendant then conducted a review of the impacted files, which concluded on July 16, 2026.[4]

5. Upon information and belief, the following types of Private Information were compromised as a result of the Data Breach: names, Social Security numbers, driver's license numbers, government identification numbers, credit and debit account information, financial account information and financial account codes.

6. Defendant derives a substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without it, Defendant could not perform its services.

7. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties and to audit, monitor, and verify the integrity of its third-party applications and affiliates for their own cybersecurity. Defendant has a legal duty to keep individuals' PII safe and confidential.

8. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties to ensure the protection of that Private Information, and it knew or should have known that it was thus responsible for protecting Plaintiff's and Class Members' PII from disclosure.

9. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices;

---

[2] *Id.*
[3] *Id.*
[4] *Id.*

and (iii) effectively secure hardware and software containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to, among other things, negligence and violates federal and state statutes.

10. Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) the theft of their PII and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information.

11. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded; failing to take available steps to prevent an unauthorized disclosure of data; and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 putative class members, and at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, including Plaintiff.

13. Under CAFA 28 USC § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Here, Defendant is a limited liability company that maintains its principal place of business in the State of Florida and is organized under Florida law. Defendant is therefore a citizen of Florida under § 1332(d)(10). Additionally, and in the alternative, even if the Court were to apply the traditional member-citizenship test for determining the citizenship of a limited liability company, Defendant's members, Brian and Priscilla Kovack, are citizens of the State of Florida. Defendant is therefore a citizen of Florida under the traditional member-citizenship analysis. Plaintiff is a citizen of Iowa. Thus, under either the CAFA test or traditional member-citizenship test, minimal diversity exists.

14. This Court has personal jurisdiction over Defendant, because its principal place of business is in Florida, and it does a significant amount of business in Florida.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant has its principal place of business located in this District and a substantial part of the events giving rise to this action occurred in this District.

## III. PARTIES

16. Plaintiff is an individual citizen of the state of Iowa, residing in Glenwood, Iowa.

17. Defendant is a Florida limited liability company with its principal place of business

located at 6451 North Federal Highway, Suite 1201, Fort Lauderdale, Florida, 33308.

## IV. FACTUAL ALLEGATIONS

### *Defendant's Business*

18. Defendant is a Florida-based, privately owned, mid-sized independent broker-dealer and registered investment advisors.

19. Defendant collects personally identifiable information in the course of doing business. This personally identifiable information includes the PII which was compromised in the Data Breach alleged herein.

20. Upon information and belief, Defendant promises to maintain the confidentiality of Plaintiff's and Class Members' PII to ensure compliance with federal and state laws and regulations, and not to use or disclose Plaintiff's and Class Members' PII for non-essential purposes.

21. As a condition of obtaining services, Plaintiff and Class Members entrust Defendant with highly sensitive personal information.

22. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure.

23. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII Plaintiff and Class Members would not have entrusted Defendant with their PII had they known that Defendant would fail to implement industry standard protections for that sensitive information.

*24.* Plaintiff and the Class Members relied on Defendant to keep their PII confidential

and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***The Data Breach***

25. Defendant became aware of suspicious activity on its IT Network on or around Aug. 28, 2025.[5] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[6]

26. Defendant's investigation determined that an unknown actor gained access to files on Defendant's computer network between Aug. 8, 2025, and Aug. 27, 2025.[7] Defendant then conducted a review of the impacted files, which concluded on July 16, 2026.[8]

27. Upon information and belief, the following types of Private Information were compromised as a result of the Data Breach: names, Social Security numbers, driver's license numbers, government identification numbers, credit and debit account information, financial account information and financial account codes.

28. Due to Defendant's inadequate security measures, Plaintiff and the Class Members now face a present, immediate, and ongoing risk of fraud and identity theft and must deal with that threat forever.

29. Upon information and belief, the PII was not encrypted prior to the data breach.

30. Upon information and belief, the cyberattack was targeted at Defendant as a company that collects and maintains valuable personal and financial data from its many customers, including Plaintiff and Class Members.

---

[5] https://oag.ca.gov/system/files/Kovack%20Securities%20Inc.%20-%20Notice%20of%20Data%20Event%20-%20CA%20AG_0.pdf (last visited Aug. 12, 2026).
[6] *Id.*
[7] *Id.*
[8] *Id.*

31. Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the PII of Plaintiff and Class Members.

32. Defendant had obligations to keep Plaintiff's and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

33. Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

*34.* Upon information and belief, Defendant made promises to Plaintiff and Class members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information, including through its privacy policies.

***The Data Breach Was Foreseeable, and the Defendant Was Aware of Its Risk***

35. It is well known that PII, including names and Social Security numbers in particular are invaluable commodities and a frequent target of hackers.

36. In 2023, a record 3,205 data breaches occurred in the United States, resulting in about 349,221,481 sensitive records being exposed, a greater than 100% increase from 2019.[9] These statistics have held steady for 2024 – when 3,158 data compromises occurred with over 23.3% occurring in the financial services industry. [10]

37. Individuals place a high value not only on their PII, but also on the privacy of that data. For the individual, identity theft causes significant negative financial impact on victims as well as severe distress and other strong emotions and physical reactions.

[9] ITRC (Identity Theft Resource Center), *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/
[10] ITRC (Identity Theft Resource Center), *2024 Data Breach Report* (January 2025), *available at* https://www.idtheftcenter.org/publication/2024-data-breach-report/

38. In light of recent high profile data breaches at other industry leading companies, including, LoanDepot (16.9 million affected, January 2024), Evolve Bank & Trust (7.6 million affected, May 2024), Financial Business and Consumer Solutions (4.2 million affected, February 2024), and Prudential Financial (2.5 million affected, February 2024) and, in light of the highly-publicized data breaches Wells Fargo has suffered as recently as 2024, Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

39. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

40. Despite the prevalence of public announcements of data breach and data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

***Defendant Had a Duty to Plaintiff and Class Members to Secure PII***

41. At all relevant times, Defendant had a duty to Plaintiff and Class Members to properly secure their PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to *promptly* notify Plaintiff and Class Members when Defendant became aware that their PII may have been compromised.

42. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class relied on Defendant to secure their PII when they entrusted Defendant with the information required to receive services from Defendant.

43. Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

44. Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a. Maintaining a secure firewall configuration.

b. Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary.

c. Monitoring for suspicious or irregular traffic to servers.

d. Monitoring for suspicious credentials used to access servers.

e. Monitoring for suspicious or irregular activity by known users.

f. Monitoring for suspicious or unknown users.

g. Monitoring for suspicious or irregular server requests.

h. Monitoring for server requests for PII.

i. Monitoring for server requests from VPNs; and

j. Monitoring for server requests from Tor exit nodes.

45. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[11] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's

[11] 17 C.F.R. § 248.201 (2013).

license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[12]

*46.* The ramifications of Defendant's failure to keep PII secure are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims is likely to continue for years.

***The Value of Personally Identifiable Information***

47. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, [13] and bank details can have a price range of $30 to over $4,000.[14]

48. As a growing number of federal courts have begun to recognize the loss of value of PII as a viable damages theory, the sale of PII from data breaches, as in the Data Breach alleged herein, is particularly harmful to data breach victims – especially when it takes place on the dark web.

49. The dark net is an unindexed layer of the internet that requires special software or authentication to access.[15] Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or 'surface' web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is

---

[12] *Id.*
[13] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/
[14] https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/
[15] *What Is the Dark Web?,* Experian, *available at* https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/

ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[16] This prevents dark web marketplaces from being easily identifiable to authorities or those not in the know.

50. A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, personal and medical information like the PII at issue here.[17] The digital character of PII stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth and medical information.[18] As Microsoft warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others." [19]

51. Plaintiff and Class Members' PII is a valuable commodity, a market exists for Plaintiff and Class Members' PII (which is why the Data Breach was perpetrated in the first place), and Plaintiff and Class Members' PII is being likely being sold by hackers on the dark web (as that is the *modus operandi* of data thieves) – as a result, Plaintiff and Class Members have lost the value of their PII, which is sufficient to plausibly allege injury arising from a data breach.

52. An active and robust legitimate marketplace for PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.[20] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker

---

[16] *Id*.
[17] *What is the Dark Web?* – Microsoft 365, *available at* https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web
[18] *Id*.; *What Is the Dark Web?,* Experian, *available at* https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/
[19] *What is the Dark Web?* – Microsoft 365, *available at* https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web
[20] https://www.latimes.com/business/story/2019-11-05/column-data-brokers

who in turn aggregates the information and provides it to marketers or app developers.[21][22] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[23]

53. The PII stolen in this specific Data Breach was particularly harmful.

54. PII can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[24]

55. Given the nature of Defendant's Data Breach, as well as the unreasonable delay in notification to Class Members, it is foreseeable that the compromised PII has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' PII can easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

*56.* The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures.

***Plaintiff's Experience***

57. Plaintiff was required to provide and did provide his PII to Defendant as a condition of receiving services from Defendant.

58. To date, Defendant has done next to nothing to adequately protect Plaintiff and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly

---

[21] https://datacoup.com/
[22] https://digi.me/about-us
[23] Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computermobilepanel.nielsen.com/ui/US/en/faqen.html
[24] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

given the fact that Plaintiff's PII has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

59. The fraud and identity monitoring services offered by Defendant places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for the service.

60. Nor has Defendant compensated Plaintiff and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords and other actions.

61. Plaintiff and Class Members have been further damaged by the compromise of their PII in the Data Breach which was "impacted" and is in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

62. Plaintiff typically takes measures to protect his PII and is very careful about sharing his PII. Plaintiff has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

63. Plaintiff stores any documents containing his PII in a safe and secure location, and he diligently chooses unique usernames and passwords for his online accounts.

64. As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff has spent significant time monitoring his accounts and credit score, changing his online account passwords, and researching the Data Breach. This is time that was lost and unproductive and took away from other activities and duties.

65. Specifically, since the date of the breach Plaintiff has spent time taking action to mitigate the harm he has suffered. Plaintiff (1) has spent, and continues to spend, considerable

time and effort actively monitoring his accounts and credit; and (2) he has anxiety now suffers from the fear of his PII being exposed, misused and sold on the black market.

66. Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his PII — a form of intangible property that he entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

67. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

68. Plaintiff suffered emotional distress and increased stress and anxiety as a result of the Data Breach because of the actions he has been forced to undertake, the loss of control over his most intimate information, and the fact that he must remain vigilant for the remainder of his life.

69. Plaintiff has suffered imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

70. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff as a condition of receiving services. Plaintiff, however, would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

71. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V. CLASS ACTION ALLEGATIONS

72. Plaintiff brings this suit on behalf of himself and a class of similarly situated individuals under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil, which is preliminarily defined as:

> Nationwide Class: All persons residing in the United States whose PII was potentially accessed in the Data Breach (the "Class").

73. The Nationwide Class shall be collectively referred to as the "Class".

74. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

75. **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, thousands of individuals have been affected by this breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

76. **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

i. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII.

ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

iii. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations.

iv. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards.

v. Whether Defendant owed a duty to Class Members to safeguard their PII.

vi. Whether Defendant breached its duty to Class Members to safeguard their PII.

vii. Whether computer hackers obtained Class Members' PII in the Data Breach.

viii. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient.

ix. Whether Plaintiff and Class Members suffered legally cognizable damage as a result of Defendant's misconduct.

x. Whether Defendant's conduct was negligent; and

xi. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

77. **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class member, was compromised in the Data Breach.

78. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

79. **Predominance.** Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the

same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

80. **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

81. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

82. Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

xii. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII.

xiii. Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts.

xiv. Whether Defendant's failure to institute adequate protective security measures amounted to negligence; and

xv. Whether Defendant failed to take commercially reasonable steps to safeguard PII,

83. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VI. CAUSES OF ACTION

**<u>COUNT I</u>**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

84. Plaintiff hereby repeats and realleges paragraphs 1 through 83 of this Complaint and incorporates them by reference herein.

85. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII for pecuniary gain, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

86. Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

87. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed. The harm that Plaintiff and Class Members experienced was within the zone of foreseeable harm

known to Defendant.

88. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between each Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a mandatory step in receiving services from. While this special relationship exists independent from any contract, it is recognized by Defendant's privacy practices, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered PII as part of its business and was solely responsible for and in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a resulting data breach.

89. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

90. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and the frequency of data breaches in general.

91. Defendant also had a common law duty to prevent foreseeable harm to others. Plaintiff and the Class were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of adequately safeguarding that PII, and the necessity of encrypting PII stored on Defendant's systems. It was foreseeable that Plaintiff and Class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

92. Defendant's conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's wrongful conduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping of Plaintiff's and the Class's PII, including basic encryption techniques available to Defendant.

93. Plaintiff and the Class had and have no ability to protect their PII that was in, and remains in, Defendant's possession.

94. Defendant was in a position to effectively protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

95. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

96. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within Defendant's possession.

97. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members PII.

98. Defendant, through its actions and/or omissions, unlawfully breached its duty to

timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

99. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

100. Pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), Defendant had a separate and independent duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

101. The FTCA is intended, in part, to protect individuals whose PII is maintained by another and who are unable to safeguard their information as they cannot exercise control or direction over the data security practices.

102. Plaintiff and the members of the Class are within the class of persons that the FTCA was intended to protect as their PII was collected and maintained by Defendant and they were unable to exercise control over Defendant's data security practices.

103. The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against.

104. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the members of the Class.

105. Defendant breached its duties to Plaintiff and the members of the Class under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

106. Had Plaintiff and the members of the Class known that Defendant would not

adequately protect their Private Information, Plaintiff and the members of the Class would not have entrusted Defendant with their Private Information.

107. Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

108. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the members of the Class, they would not have been injured.

109. The injury and harm suffered by Plaintiff and the members of the Class was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiff and the members of the Class to experience the foreseeable harms associated with the exposure of their Private Information.

110. As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued

possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

111. As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

112. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

113. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are now at an increased risk of identity theft or fraud.

114. As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff is entitled to and demands actual, consequential, and nominal damages and injunctive relief to be determined at trial.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

115. Plaintiff hereby repeats and realleges paragraphs 1 through 83 of this Complaint and incorporates them by reference herein.

116. Plaintiff and the Class entrusted their PII to Defendant as a condition of receiving services from Defendant. In so doing, Plaintiff and the Class entered into implied contracts with

Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

117. At the time Defendant acquired the PII of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and not take unjustified risks when storing the PII.

118. Implicit in the agreements between Plaintiff and Class Members and Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

119. Plaintiff and the Class would not have entrusted their PII to Defendant had they known that Defendant would make the PII internet-accessible, not encrypt sensitive data elements, and not delete the PII that Defendant no longer had a reasonable need to maintain it.

120. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

121. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

122. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and

impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

123. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

**COUNT III**
**INVASION OF PRIVACY – INTRUSION UPON SECLUSION**
**(On Behalf of Plaintiff and the Class)**

124. Plaintiff hereby repeats and realleges paragraphs 1 through 83 of this Complaint and incorporates them by reference herein.

125. Plaintiff and Class Members have a legally protected privacy interest in their PII, which is and was collected, stored and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access, as occurred with the Data Breach.

126. Plaintiff and Class Members reasonably expected that Defendant would protect and secure their PII from unauthorized parties and that their PII would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

127. Defendant intentionally intruded into Plaintiff's and Class Members' seclusion by disclosing without permission their PII to a third party. Defendant's acts and omissions giving rise

to the Data Breach were intentional in that the decisions to implement lax security and failure to timely notice Plaintiff and the Class were undertaken willfully and intentionally.

128. By failing to keep Plaintiff's and Class Members' PII secure, and disclosing PII to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion by, inter alia:

a. intruding into their private affairs in a manner that would be highly offensive to a reasonable person.
b. invading their privacy by improperly using their PII obtained for a specific purpose for another purpose, or disclosing it to unauthorized persons.
c. failing to adequately secure their PII from disclosure to unauthorized persons; and
d. enabling the disclosure of their PII without consent.

129. This invasion of privacy resulted from Defendant's intentional failure to properly secure and maintain Plaintiff's and Class Members' PII, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded and private data.

130. Plaintiff's and Class Members' PII is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff's and Class Members' PII, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

131. The disclosure of Plaintiff's and Class Members' PII to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

132. Defendant's willful and reckless conduct that permitted unauthorized access,

exfiltration and disclosure of Plaintiff's and Class Members' sensitive PII is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

133. The unauthorized access, exfiltration, and disclosure of Plaintiff's and Class Members' PII was without their consent, and in violation of various statutes, regulations and other laws.

134. As a direct and proximate result of Defendant's intrusion upon seclusion, Plaintiff and Class Members suffered injury and sustained actual losses and damages as alleged herein. Plaintiff and Class Members alternatively seek an award of nominal damages.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

135. Plaintiff hereby repeats and realleges paragraphs 1 through 83 of this Complaint and incorporates them by reference herein.

136. This Count is brought in the alternative to Count II, Breach of Implied Contract.

137. Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII. In so conferring this benefit, Plaintiff and Class Members understood that part of the benefit Defendant derived from the PII would be applied to data security efforts to safeguard the PII.

138. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

139. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure

to provide the requisite security.

140. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

141. Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

142. If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

143. Plaintiff and Class Members have no adequate remedy at law.

144. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

145. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

146. Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class defined herein, prays for judgment as against Defendant as follows:

a.) For an Order certifying this action as a Class action and appointing Plaintiff and his counsel to represent the Class.

b.) For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members.

c.) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Breach.

d.) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct.

e.) Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class.

f.) For an award of actual damages, compensatory damages, statutory damages and statutory penalties, in an amount to be determined, as allowable by law.

g.) For an award of punitive damages, as allowable by law.

h.) For an award of attorneys' fees and costs, and any other expenses, including expert witness fees.

i.) Pre- and post-judgment interest on any amounts awarded and,

j.) All such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury

DATED: August 14, 2026,

Respectfully submitted,

*/s/: Mariya Weekes*
Mariya Weekes (FBN 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (786) 206-9057
mweekes@milberg.com

Tonyia J. Johnson
**SHAMIS & GENTILE P.A.**
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299
tjohnson@shamisgentile.com

*Attorney for Plaintiff and the Class*